NO.  24-10288

DISTRICT COURT CASE NO. 2:23-CR-00030-SCJ

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

LYEDREKUS BAILEY,

APPELLANT

vs.

UNITED STATES OF AMERICA,

APPELLEE.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

**APPELLANT'S OPENING BRIEF**


SARALIENE SMITH DURRETT
SARALIENE SMITH DURRETT, LLC
1800 PEACHTREE STREET
SUITE 300
ATLANTA, GA 30309

ATTORNEY FOR APPELLANT

In compliance with 11th Cir. R. 26.1-3, Appellant Bailey, by and through his attorney of record, hereby asserts that the interested persons in this case are:

Bailey, Lyedrekus Onetaye, Defendant/Appellant

Buchanan, Ryan K., United States Attorney

Durrett, Saraliene – Attorney for Defendant/Appellant

Fuller, J. Clay, United States Magistrate Judge

Hames, Adam M., Former Attorney for Defendant-Appellant

Hertzberg, Theodore S., Assistant United States Attorney

Jeffrey, Mark, former attorney for Defendant-Appellant

Jones, Steve C., United States District Judge

Schechtman, Noah R., Assistant United States Attorney

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the record is sufficient to aid the Court in its determinations.  Oral argument is not requested unless the Court determines it would be helpful to resolve the issues raised here.

## <u>TABLE OF CONTENTS</u>

Statement Regarding Oral Argument ……………………….……………….…iii

Table of Authorities ...…………………………….……..……….....…….….……v

Statement of Jurisdiction ……….…………….…..….…………..….……....…...vii

Statement of the Issues ...……………………………….….……………...….1

Statement of the Case ...……………………………….……….……………..……2

Summary of the Argument ...………………………….…….….…………..…..…11

Standards of Review ………………………………………………….……....12

Argument ...…………………………………………………….…..…....…..13

I.    Mr.    Bailey's plea should vacated because it was not knowingly and
        voluntarily entered…………………………………………….…………13

    A. Mr. Bailey's own attorney did not have a clear understanding of the choices
        among the alternative courses of action in connection with this case and, thus,
        he could not properly advise Mr. Bailey………………..………….…..14

    B. Mr. Bailey's mental health concerns combined with his limited education
        contributed to his inability to understand the consequences of his plea…....…18

II.    Had Mr. Bailey been properly informed of the consequences of his plea, he
        would not have entered the plea…………………………...…………… 24

III.    Mr. Bailey has shown plain error and this court should exercise its discretion
        and vacate his conviction…………………………………...……………26

IV.    Conclusion…………………………………………….……………28

Certificate of Compliance …………….……..……………………...……29

Certificate of Service …………………………………….…………..……30

# TABLE OF AUTHORITIES

## U.S. SUPREME COURT

*Boykin v. Alabama,* 395 U.S. 238 (1969)……………………..……………....18

*United States v. Dominguez Benitez,* 542 U.S. 74 (2004)…………………..………24

*Hill v. Lockhart,* 474 U.S. 52 (1985)……………………..………...………14

*Mabry v. Johnson,* 467 U.S. 504 (1984)………………..………..………………14

*McCarthy v. United States,* 394 U.S. 459 (1969)………...…………………..…13

*Puckett v. United States,* 556 U.S. 129 (2009)……………………..………14

*Strickland v. Washington,* 466 U.S. 668 (1984)…………………………...………24

*United States v. Vonn*, 535 U.S. 55 (2002)……………………...…………………..…13

## ELEVENTH CIRCUIT

*United States v. Bankston*, 945 F.3d 1316 (11th Cir. 2019)………………..………26

*Gaddy v. Linahan,* 780 F.2d 935 (11th Cir. 1986)………………………...…15, 18

*United States v. Hernandez-Fraire*, 208 F.3d 945 (11th Cir. 2000)………………..13

*LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988)………………………...…18

*United States v. Moriarty*, 429 F.3d 1012 (11th Cir. 2005)……………..………12

*United States v. Quinones*, 97 F.3d 473 (11th Cir. 1996)…………………………...13

*United States v. Rodriguez*, 751 F.3d 1244 (11th Cir. 2014)……………..………12, 27

*Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018)……...………………26, 27

## <u>TABLE OF AUTHORITIES</u>

### <u>ELEVENTH CIRCUIT</u>

*United States v. Symington*, 781 F.3d 1308 (11th Cir. 2015)………………….....13

### <u>OTHER CIRCUITS</u>

*Fields v. Gibson,* 277 F.3d 1203 (10th Cir.2002)………………………….….14

*Monroe v. United States,* 463 F.2d 1032 (5th Cir.1972)……………...…………15

*United States v. Sabillon–Umana*, 772 F.3d 1328 (10th Cir. 2014) ../……………..27

### <u>STATUTES/RULES</u>

21 U.S.C. 841(b)(1)(B)…………………………..………………………..25

### <u>OTHER SOURCES</u>

Bowers & Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–216 (2012)…………………………………...………………….27

## STATEMENT OF JURISDICTION

This Court has jurisdiction to consider this case pursuant to 28 U.S.C. §1291 and Fed. R. App. P. 4. This is an appeal from a guilty plea in the United States District Court for the Northern District of Georgia.

## <u>STATEMENT OF THE ISSUES</u>

I.      MR. BAILEY'S PLEA SHOULD VACATED BECAUSE IT WAS NOT KNOWINGLY AND VOLUNTARILY ENTERED.

II.     HAD MR. BAILEY BEEN PROPERLY INFORMED OF THE CONSEQUENCES OF HIS PLEA, HE WOULD NOT HAVE ENTERED THE PLEA.

III.    MR. BAILEY HAS SHOWN PLAIN ERROR AND THIS COURT SHOULD EXERCISE ITS DISCRETION AND VACATE HIS CONVICTION.

## STATEMENT OF THE CASE

***Proceedings Below***

Appellant Lyedrekus Bailey was originally charged via indictment with:

one count of conspiracy to distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[l-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) pursuant to 21 U.S.C. 841(b)(1)(B) and in violation of 21 U.S.C. 846, and

four counts of distribution of a mixture and substance containing a detectable amount of N-phenyl-N-[l-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) pursuant to 21 U.S.C. 841(b)(1)(C) and in violation of 841(a)(1).

2:22-cr-00048-SCJ-JCF, Doc. 1.  The indictment contained a prior conviction notice alleging that Mr. Bailey was convicted of Possession of Cocaine with Intent to Distribute, a serious drug felony, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense. 2:22-cr-00048-SCJ-JCF, Doc. 1 at 4.

At his initial appearance on December 8, 2022, the court appointed the federal public defender's office to represent Mr. Bailey.  2:22-cr-00048-SCJ-JCF, Doc. 8. On December 20, 2022, the appointed assistant federal public defender moved to withdraw citing a conflict of interest.  2:22-cr-00048-SCJ-JCF, Doc. 20.  The court granted this motion and, on the same day, the court appointed attorney Mark Jeffrey

to represent Mr. Bailey. On March 27, 20243, the case was scheduled for trial on June 12, 2023. 2:22-cr-00048-SCJ-JCF, Doc. 32. On April 27, 2023, counsel Jeffrey moved to withdraw. Doc. 34. Counsel noted that a plea offer had been made and that Mr. Bailey was considering it. Counsel also noted that Mr. Bailey did not believe that counsel was acting in his best interest and that Mr. Bailey has lost confidence in counsel's ability to defend him. 2:22-cr-00048-SCJ-JCF, Doc. 34 at 2.

The court granted the request to withdraw and, on May 4, 2023, the court appointed attorney Adam Hames to represent Mr. Bailey. 2:22-cr-00048-SCJ-JCF, Doc. 39. The case was then decertified ready for trial. 2:22-cr-00048-SCJ-JCF, Doc. 40. On May 10, 2023, the government filed information to establish Mr. Bailey's prior convictions pursuant to 21 U.S.C. § 851. 2:22-cr-00048-SCJ-JCF, Doc. 41. The case was certified ready for trial on May 31, 2023, and trial was scheduled for October 23, 2023. 2:22-cr-00048-SCJ-JCF, Docs. 42, 43.

A pretrial conference was held on September 19, 2023. 2:22-cr-00048-SCJ-JCF, Doc. 46. At the conference, counsel for the government noted that a plea offer that included a government recommendation for 188 months had previously been made to Mr. Bailey, but that offer had been allowed to lapse. 2:22-cr-00048-SCJ-JCF, Doc. 57 at 10.

On October 4, 2023, the court scheduled a change of plea hearing for Mr. Bailey.  2:22-cr-00048-SCJ-JCF, Doc. 40.  On October 6, 2023, Mr. Bailey pleaded guilty to an information, pursuant to a written plea agreement with the government.  2:23-cr-00030-SCJ.  The single count in the information alleged that Mr. Bailey:

> conspired to distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[l-(2- phenylethyl)-4-piperidinyl] propanamide (fentanyl) and at least 100 grams of a mixture and substance containing a detectable amount of heroin, pursuant to 21 U.S.C. 841(b)(1)(B) and in violation of  21 U.S.C. 846.

2:23-cr-00030-SCJ at 1.  The information did not contain a prior conviction notice.  The plea agreement to which Mr. Bailey pleaded guilty outlined the mandatory minimum sentence as five years and the maximum sentence as forty years. 2:23-cr-00030-SCJ, Doc. 2-1 at 3.

The plea agreement included a provision stating that the government would recommend that the defendant be sentenced to 235 months in prison and the defendant would recommend that he be sentenced to 188 months in prison.  2:23-cr-00030-SCJ, Doc. 2-1 at 6.  The standard appeal waiver was modified by the parties to include a provision that stated that the defendant could only file a direct appeal of any term of imprisonment greater than 235 months, rather than if an upward departure or upward variance from the guidelines were granted. 2:23-cr-00030-SCJ, Doc. 2-1 at 10.  The agreement permitted the defendant to appeal if the government

appealed, and claims of ineffective assistance were excepted from the waiver.  2:23-cr-00030-SCJ, Doc. 2-1 at 10.

### *Plea Hearing*

At his October 6, 2023 plea hearing, Mr. Bailey needed to consult with his attorney repeatedly, but he did enter the guilty plea.  Doc. 23 at 11-12, 34, 36, 37, 39.  When the court asked Mr. Bailey if he had had sufficient time to think about and discuss this matter fully with his attorney before entering the guilty plea,  Mr. Bailey answered, "No, sir."  Doc. 23 at 21.  The court then stated, "Okay. Then in that case, we will set this case for trial on October 23. Thank you-all."  Doc. 23 at 21.  Mr. Bailey then said, "I had enough time to talk to him."  Doc. 23 at 21.  The court then said, "And let me say, before I ask the question, the Court is prepared to have a trial on October 23 starting at 9:30 in the United States District Court for the Gainesville Division. I am not trying to force you to trial, Mr. Bailey.  If you don't think you've had enough time to talk to your attorney, Mr. Hames, we will give you that time."  Doc. 23 at 22.

The court asked if the government was prepared for trial and then asked, "So one more time. Have you had sufficient time to talk to Mr. Hames about your case before entering a plea of guilty here today?" Doc. 23 at 22.  Mr. Bailey answered, "Yes, sir."  Doc.23 at 22.  The court then told Mr. Bailey that if did not have enough time to consult with his lawyer then the guilty plea would not go forward.  Doc. 23

at 23.  The government noted that the guilty plea offer would be withdrawn if Mr.

Bailey did not enter it that day, but noted that Mr. Bailey could still plead guilty to

the offenses outlined in the indictment in case number 2:22-cr-00048-SCJ-JCF.

Doc. 23 at 23.

> The court told Mr. Bailey:
>
> You don't have to go forward here this morning on this plea of guilty.
> If you say you didn't have enough time, you don't have to go forward.
> You can talk more to Mr. Hames about it and plead guilty at any point
> in time between now and October 23, even at the day of trial, as long
> as you understand what Mr. Hertzberg just said.

Doc. 23 at 24.  Mr. Bailey told the court he did not understand.  Doc. 23 at 24.  The

government then explained:

> What I understand the Court to be saying is that you, Mr. Bailey, will
> continue to have the ability to change your plea between now and the
> conclusion of that trial or not. But the 030 case will not be at issue,
> because that's either a guilty plea this morning or we're back on track
> with the 048 case, where the choice is yours to plead guilty or proceed
> to the conclusion of trial. But at any time you can choose how to
> proceed. The Court is not forcing you, the government is not forcing
> you, the choice is yours with essentially three options: Plead guilty to
> 030 today; go to trial on 048; or plead guilty in 048 at the time of your
> choice.

Doc. 23 at 25.  Defense counsel then stated:

> Your Honor, there is one key important fact that is important to my
> client's clear understanding of this, which is the indicted case has an
> 851 sentencing enhancement and two prior convictions. So if he goes
> forward to trial or if he pleads to that indictment, he is looking at a
> mandatory minimum 25-year sentence.

Doc. 23 at 25.  The court responded, "That's true."  Doc. 23 at 25.  Defense counsel

added, "And the Court has zero discretion to go below that."  Doc. 23 at 25.  The

government then explained:

> I have to correct the record on that. Although there are two convictions
> that are noted in the indictment, the defendant's charges are pursuant to
> 846 and 841, with the penalty provisions being 841(b)(1)(B) and
> 841(b)(1)(C).  The addition of that second conviction does not elevate
> the mandatory minimum to 25 years.  What it does do is it changes the
> five to 40 range under (b)(1)(B) to ten to life; it changes the (b)(1)(C)
> range from zero to 20 to zero to 30. So there is no 25-year mandatory
> minimum because there is no (b)(1)(A) count in the indictment.

Doc. 23 at 26.  The government noted that pleading to the original indictment could

affect Mr. Bailey's guideline range because "the government believes that Mr.

Bailey is a career offender.  The career offender guideline, 4B1.1, dictates the base

offense level on the basis of the statutory maximum.  So by changing the sentencing

range from five to 40 to 10 to life and from zero to 20 to zero to 30, that could affect

Mr. Bailey's guideline range, because the statutory maximum has changed."  Doc.

23 at 26.

After this exchange, the court again asked if Mr. Bailey had sufficient time to

consult with his lawyer.  Doc. 23 at 27.  Mr. Bailey conferred with his counsel and

then counsel stated that Mr. Bailey wanted to continue with the plea.  Doc. 23 at 27.

Mr. Bailey agreed, but when the court asked if he was satisfied with the

representation of his lawyer, he said, "No, not really . . . I don't want to go to trial

though."  Doc. 23 at 27.  The court then told Mr. Bailey he could represent himself

or hire a lawyer but that the court would not appoint a new lawyer. Doc. 23 at 28. The court then asked if there was something in particular Mr. Hames had done.  Mr. Bailey explained that he had requested a mental health evaluation.  He said he never wanted to turn down a plea deal and go to trial, but that is what happened and now he was set for trial.  Doc. 23 at 29.  He said he did not know he was going to trial. He mentioned a prior plea offer and noted that the current offer was "way worse" than the prior offer.  Doc. 23 at 29.  He stated:

> And I was never trying to even have this problem with the DA about no plea. I just wanted to have [a mental health] evaluation before I made any decision. But now -- now I'm forced with this plea, either get life or take -- take 16 years from a plea deal -- from a plea deal that I didn't even -- that I really never -- I just wanted to talk to an evaluation (sic) before. And I told him -- I mean, the only thing he did was gave me a time to -- when I had to take this plea. But I ain't never really wanted to go to trial, next thing you know, I'm going to trial. That's how I really feel. He didn't represent me right, because he didn't do what I -- like, he didn't do what I asked when I asked to get evaluated. And that's all I wanted to do. I never wanted to go to trial.

Doc. 23 at 29.

The court then held a sealed and ex parte portion of the plea hearing, during which defense counsel stated that if he had any indication that Mr. Bailey suffered from some mental health illness or defect that would preclude him from understanding the nature of these proceedings, counsel would have petitioned the Court for a mental health evaluation.  October 6, 2023 transcript at 31 (sealed).

The court then found that Mr. Bailey was requesting an evaluation "for purposes of delay." October 6, 2023 transcript at 31 (sealed). The court then explained,

> Now, again, I can't make you keep Mr. Hames. But, again, I'm not going to replace Mr. Hames with anyone else. So, again, your options are if you have the financial ability, you can hire your own attorney. You have the right to represent yourself. That would be the worst mistake you ever make in your life, depending on what you're looking at, the possible sentences you are looking at. But I have to explain to you, you do have that right; but I highly, highly recommend that you don't even consider doing that. So Mr. Hames is going to remain your attorney. So the question I have for you now, do you want to proceed with this plea?

October 6, 2023 transcript at 31 (sealed). Mr. Bailey responded, "Yeah." October 6, 2023 transcript at 31-32 (sealed). The plea hearing then continued with the court ultimately finding that Mr. Bailey "understands the charge and the consequences of his plea of guilty." Doc. 23 at 39.

### *Sentencing hearing*

The probation department calculated the defendant's base level offense to be 24 (prior to acceptance of responsibility) and his criminal history to be V. PSR ¶ 32, ¶ 48. However, the probation department determined that Mr. Bailey was a career offender and therefore his base level offense was 34 and his criminal history was VI. PSR ¶ 33, ¶ 48. His total offense level was 31 and the corresponding guideline range was 188 – 235. PSR ¶ 35, PSR at 21.

Mr. Bailey was sentenced to 235 months in custody.  Doc. 10.   He filed a timely notice of appeal.  Doc. 15.

He remains in custody.

## SUMMARY OF THE ARGUMENT

The district court plainly erred by accepting Mr. Bailey's guilty plea where it failed to comply with one of the core purposes of Federal Rule of Criminal Procedure 11, specifically, ensuring that he understand the consequences of his plea.

Not only did Mr. Bailey tell the court that he was having mental health issues and that he wanted an evaluation before he entered the plea, defense counsel was obviously confused about the possible penalties Mr. Bailey was facing if he did not immediately accept the plea.  Mr.  Bailey could not have made a knowing decision to plead guilty if he did not understand the choices that were before him.  Based on counsel's advice, Mr. Bailey had been led to believe that, if he did not plead guilty at the plea hearing, he faced a twenty-five year mandatory minimum sentence and a maximum sentence of life in prison.  Although this was clarified by the government during the plea hearing, the court did not ensure that Mr. Bailey understood the actual consequences he was facing if he chose not to plead immediately.

Mr. Bailey would have rejected the plea agreement if he had had known that he did not actually face twenty-five years to life if he chose to reject the plea agreement.  The district court's acceptance of his guilty plea constituted plain error and mandates reversal because the plea was not knowing and voluntary.

## STANDARDS OF REVIEW

When defendant argues for the first time on appeal that his guilty plea was constitutionally invalid because it was not knowing and voluntary, this Court reviews for plain error, using a four-prong inquiry. *United States v. Moriarty*, 429 F.3d 1012, 1018 (11th Cir. 2005). To establish plain error, a defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affects substantial rights. *Id.* at 1019. To establish prejudice in the Rule 11 context, the defendant must show a reasonable probability that, but for the error, he would not have entered the plea. *United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014).

If these three conditions are met, this Court has discretion to recognize an unpreserved error if the (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration accepted) (quotation marks omitted).

## ARGUMENT

### I.    MR. BAILEY'S PLEA SHOULD VACATED BECAUSE IT WAS NOT KNOWINGLY AND VOLUNTARILY ENTERED.

The Supreme Court has held that "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States,* 394 U.S. 459, 466 (1969).

Federal Rule of Criminal Procedure 11 "imposes upon a district court the obligation and responsibility to conduct an inquiry into whether the defendant makes a knowing and voluntary guilty plea." *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). There are three core concerns underlying Rule 11 that must be addressed during the Rule 11 inquiry: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *Id*. Failure to satisfy any of the core objectives violates the defendant's substantial rights. *United States v. Quinones*, 97 F.3d 473, 475 (11th Cir. 1996), *abrogated on other grounds by United States v. Vonn*, 535 U.S. 55, 74–75, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); *see also United States v. Symington*, 781 F.3d 1308, 1313-14 (11th Cir. 2015) (failure to address any of these three concerns, such that a defendant's substantial rights are affected, requires automatic reversal of the conviction and the opportunity to plead anew.").

13

Mr. Bailey's conviction should be vacated because A) his attorney did not understand the difference in consequences between Mr. Bailey pleading guilty with a plea agreement or without an agreement and, thus, he could not properly advice Mr. Bailey, and B) there was no showing that Mr. Bailey understood his options in this case or the consequences of his plea.

**A.    Mr. Bailey's own attorney did not have a clear understanding of the choices among the alternative courses of action in connection with this case and, thus, he could not properly advise Mr. Bailey.**

"[W]hen it develops that the defendant was not fairly apprised of its consequences . . . his plea [can] be challenged under the Due Process Clause." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) *disapproved of on other grounds by Puckett v. United States,* 556 U.S. 129, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). And "[t]he longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. 366 (1985) (internal quotation marks omitted); *Fields v. Gibson,* 277 F.3d 1203, 1213 (10th Cir.2002). ("[a] plea may be involuntary when an attorney materially misinforms the defendant of the consequences of the plea."). Conclusory responses by a defendant and his counsel to a court's inquiry into whether the defendant "understands" the charge is not sufficient to establish that the defendant actually has knowledge and

understanding, particularly when he possesses minimal intelligence. *Gaddy v. Linahan,* 780 F.2d 935, 945 (11th Cir. 1986), *citing Monroe v. United States,* 463 F.2d 1032, 1035 (5th Cir.1972).

Mr. Bailey pleaded guilty pursuant to a plea agreement that required that 1) he agree that the parties would recommend a sentence between 188 and 235 months in prison and 2) he waived his right to appeal unless the court sentenced him to more than 235 months in prison.  Had Mr. Bailey not accepted the plea offer, he could have pleaded guilty to his original indictment and 1) requested a sentence lower than 188 months and 2) maintained his right to appeal his sentence.[1]  It is not clear from the record that Mr. Bailey or his counsel understood this.

During his plea hearing, the court asked Mr. Bailey if he had had sufficient time to think about and discuss this matter fully with his attorney before entering the guilty plea.  Mr. Bailey answered, "No, sir."  Doc. 23 at 21.  The court then stated, "Okay. Then in that case, we will set this case for trial on October 23. Thank you-all."  Doc. 23 at 21.  Mr. Bailey then said, "I had enough time to talk to him."  Doc. 23 at 21.  The court then said, "And let me say, before I ask the question, the Court is prepared to have a trial on October 23 starting at 9:30 in the United States District

---

[1]    It is true that Mr. Bailey's guideline range could have been higher had he pleaded to the original indictment, but it appears that Mr. Bailey and his counsel were primarily concerned with the mandatory minimum sentence when making the decision to plead on the day of the hearing.

Court for the Gainesville Division. I am not trying to force you to trial, Mr. Bailey.
If you don't think you've had enough time to talk to your attorney, Mr. Hames, we
will give you that time." Doc. 23 at 22. The court asked if the government was
prepared for trial and then asked, "So one more time. Have you had sufficient time
to talk to Mr. Hames about your case before entering a plea of guilty here today?"
Doc. 23 at 22. Mr. Bailey answered, "Yes, sir." Doc.23 at 22. The court then told
Mr. Bailey that if did not have enough time to consult with his lawyer then the guilty
plea would not go forward. Doc. 23 at 23.

Defense counsel then provided his understanding of why Mr. Bailey needed
to plead at time of the hearing, rather than waiting for another date. Counsel stated:

> Your Honor, there is one key important fact that is important to my
> client's clear understanding of this, which is the indicted case has an
> 851 sentencing enhancement and two prior convictions. So if he goes
> forward to trial or if he pleads to that indictment, he is looking at a
> mandatory minimum 25-year sentence.

Doc. 23 at 25. The court responded, "That's true." Doc. 23 at 25. Defense counsel
added, "And the Court has zero discretion to go below that." Doc. 23 at 25. Counsel
was clearly stating that Mr. Bailey either needed to plead guilty at the time of the
hearing or face a twenty-five-year mandatory minimum. This statement was
incorrect.

The government then explained:

> I have to correct the record on that. Although there are two convictions
> that are noted in the indictment, the defendant's charges are pursuant to

16

846 and 841, with the penalty provisions being 841(b)(1)(B) and 841(b)(1)(C). The addition of that second conviction does not elevate the mandatory minimum to 25 years. What it does do is it changes the five to 40 range under (b)(1)(B) to ten to life; it changes the (b)(1)(C) range from zero to 20 to zero to 30. So there is no 25-year mandatory minimum because there is no (b)(1)(A) count in the indictment.

Doc. 23 at 26. The government noted that pleading to the original indictment could affect Mr. Bailey's guideline range because "the government believes that Mr. Bailey is a career offender. The career offender guideline, 4B1.1, dictates the base offense level on the basis of the statutory maximum. So by changing the sentencing range from five to 40 to 10 to life and from zero to 20 to zero to 30, that could affect Mr. Bailey's guideline range, because the statutory maximum has changed." Doc. 23 at 26.

There was no further discussion of this issue. The court then asked, "Do you feel, Mr. Bailey, that you've had sufficient time to think about and discuss this matter fully with your attorney, Mr. Hames, before entering a plea of guilty?" Doc. 23 at 27. Mr. Bailey conferred with his attorney and his attorney stated, "my client still wishes to go forward with the plea." Doc. 23 at 27.

The court then asked, "And are you satisfied -- you indicated, but I need to ask you again -- are you satisfied with the representation Mr. Hames has done representing you thus far?" Doc. 23 at 27. Mr. Bailey responded, "No, not really." Doc. 23 at 27. This discussion then led to a sealed portion of the hearing, during

which the court found there was no reason to remove Mr. Bailey's attorney from the case.

Based on counsel's own statements, however, counsel did not have a correct understanding of Mr. Bailey's options at the time of the plea and, for that reason, he could not have properly communicated those options to Mr. Bailey. Based on counsel statements, it cannot be said that Mr. Bailey ever had a clear understanding of the consequences of his plea.

**B.    Mr. Bailey's mental health concerns combined with his limited education contributed to his inability to understand the consequences of his plea.**

In order for a guilty plea to be entered knowingly and intelligently, the defendant must have not only the mental competence to understand and appreciate the nature and consequences of his plea but he also must be reasonably informed of the nature of the charges against him, the factual basis underlying those charges, and the legal options and alternatives that are available. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Gaddy v. Linahan,* 780 F.2d 935 (11th Cir. 1986). This Court has held that where a defendant has a below-average intelligence, "[a]dditional care must be taken . . . to assure that the defendant does have a clear understanding of the consequences of his act." *LoConte v. Dugger*, 847 F.2d 745, 751 (11th Cir. 1988).

In the present case, after being informed that Mr. Bailey was concerned about his own mental health, the court should have conducted a more in-depth inquiry of the issues or postponed the plea hearing so that a mental health evaluation could be performed. This is particularly true in light of Mr. Bailey's limited education and repeated conferences with his attorney before answering each of the court's questions.

At the outset of the plea, Mr. Bailey told the court he had "maybe" a 9th grade education. Doc. 23 at 9. The PSR in this case notes that Mr. Bailey "really quit school at age 12 while in the 6th grade when his stepfather died [but that] [t]he schools passed him through until 9th grade when he stopped attending altogether." PSR ¶ 66. The PSR also states that Mr. Bailey "admitted he spent much of his time from 6th through 9th grades in juvenile detention." PSR ¶ 66. The PSR also outlines substance abuse and mental health concerns that Mr. Bailey raised about his family. He "reported his father abused drugs and alcohol during the defendant's developmental years and the defendant believes he may have had mental health issues but is unsure." PSR ¶ 56. He also reported having concerns about his own mental health. It noted that the death of his step-father when he was 12 years old was "traumatic" for Mr. Bailey and that it "changed the trajectory" of his life. PSR ¶ 59. As a result, they lost the house they were living in, and his mother was not able to support the family any longer, resorting to crack cocaine to deal with the

19

stress. PSR ¶ 59.   Mr. Bailey's lack of education combined with his repeated need to confer with his attorney should have been a cause for concern for the court.

When asked if he had read the plea agreement, he noted that his attorney had read it to him.  Doc 23 at 9.   Mr. Bailey also explained that never wanted to turn down a plea deal and go to trial, but that is what happened and now he was set for trial.  Doc. 23 at 29.  He said he did not know he was going to trial.  He mentioned a prior plea offer and noted that the current offer was "way worse" than the prior offer.  Doc. 23 at 29.  He stated:

> And I was never trying to even have this problem with the DA about no plea. I just wanted to have an evaluation before I made any decision. But now -- now I'm forced with this plea, either get life or take -- take 16 years from a plea deal -- from a plea deal that I didn't even -- that I really never -- I just wanted to talk to an evaluation (sic) before. And I told him -- I mean, the only thing he did was gave me a time to -- when I had to take this plea. But I ain't never really wanted to go to trial, next thing you know, I'm going to trial. That's how I really feel. He didn't represent me right, because he didn't do what I -- like, he didn't do what I asked when I asked to get evaluated. And that's all I wanted to do. I never wanted to go to trial.

Doc. 23 at 29.

The court then held a sealed and ex parte portion of the plea hearing, during which defense counsel stated that if he had any indication that Mr. Bailey suffered from some mental illness or defect that would preclude him from understanding the nature of these proceedings, counsel would have petitioned the court for a mental health evaluation.  October 6, 2023 transcript at 31 (sealed). The court then found

that Mr. Bailey was requesting an evaluation "for purposes of delay." October 6,

2023 transcript at 31 (sealed). The court then explained:

> Now, again, I can't make you keep Mr. Hames. But, again, I'm not
> going to replace Mr. Hames with anyone else. So, again, your options
> are if you have the financial ability, you can hire your own attorney.
> You have the right to represent yourself. That would be the worst
> mistake you ever make in your life, depending on what you're looking
> at, the possible sentences you are looking at. But I have to explain to
> you, you do have that right; but I highly, highly recommend that you
> don't even consider doing that. So Mr. Hames is going to remain your
> attorney. So the question I have for you now, do you want to proceed
> with this plea?

October 6, 2023 transcript at 31 (sealed). Mr. Bailey responded,

"Yeah." October 6, 2023 transcript at 31-32 (sealed). The plea hearing then

continued.

Based on Mr. Bailey request for a mental health evaluation and his statements

to the court that he wanted the evaluation prior to entering a plea of guilty, the court

should have postponed the plea hearing. Given the fact that Mr. Bailey was

admitting to suffering from mental health issues at the time of his plea, it cannot be

said that he could enter a knowing and voluntary plea. Additionally, Mr. Bailey's

lack of education may have combined with his mental health issues to make it even

more difficult for him to fully understand the consequences of his plea.

At the time of his sentencing, Mr. Bailey was still reporting to the court and

to probation that he wanted to see a mental health professional, but that he had not

yet been seen. PSR ¶ 64. The PSR notes that Mr. Bailey "advised he feels he suffers

21

with depression and possibly anxiety" and that his "symptoms include feelings of helplessness and hopelessness and that there is no purpose for living." PSR ¶ 64. It also noted that he reported that he had "never been seen by a mental health professional in the past and has never received a diagnosis or medication" and that he was amenable to receiving mental health treatment." PSR ¶ 64. Mr. Bailey also outlined a history of substance abuse, starting at age 12. The PRS states:

> The defendant reported he began using marijuana at the age of 12. He also used cocaine and ecstasy beginning at a very young age. At age 30, the defendant's drug of choice became heroin. At the time of the instant offense, the defendant was using one gram or more daily of heroin. He was also combining alcohol daily with his drink of choice being cognac. When available, the defendant would use one gram of ICE in combination with the heroin and alcohol ("every now and then"). The defendant has never received substance abuse treatment and he is amenable to receiving any treatment available to him.

PSR ¶ 65. Because there was no effort by the district court to address Mr. Bailey's limited education and understanding or to ensure that he understood the intricate conversation that occurred between the attorneys and the court particularly regarding the potential for a twenty-five year mandatory minimum, the record does not support the conclusion that Mr. Bailey fully understood the consequences of his plea.

During the plea hearing, there were also many moments when Mr. Bailey had to consult with his attorney before answering the court's questions. For example, at the beginning of the hearing, the court asked, "Other than the plea agreement, has anyone made a promise to you that caused you to give up your right to be indicted

by the grand jury? Doc. 23 at 11-12. Mr. Bailey responded, "I guess so, Your Honor." He then conferred with his attorney and changed his answer, to "no." Doc. 23 at 11-12.

There were several other instances where Mr. Bailey needed to consult with his attorney. *See, e.g.*, Doc. 23 at 34 (when asked if he talked to his lawyer about the sentencing guidelines); Doc. 23 at 36 (when asked if he understood he was giving up his right to collaterally attack his conviction and sentence); Doc. 23 at 37 (when asked if he understood that if violates conditions of release, he could be sent back to prison for the entire term of supervised release); Doc. 23 at 37 (when asked if he understood that if his sentence was more severe than he expected, he would not have a right to withdraw it and that he would be bound by his plea); Doc. 23 at 37 (when asked if understood that the court did not accept the sentencing and recommendation in his plea agreement, he would still be bound by his plea and he would have no right to withdraw it); Doc. 23 at 39 (when asked if he agreed with the government's summary of the evidence).

Additionally, it is not clear that Mr. Bailey and his counsel understood that they were bound by the terms of the plea agreement, which prevented them from asking for less than 188 months in custody, because counsel's initial sentencing memorandum actually requested a sentence lower than that called for in the plea agreement (doc. 6 at 16).

Given the confusion shown by Mr. Bailey's attorney and the need for him to repeatedly confer during the hearing, the trial court should have inquired further or postponed the plea hearing to ensure that Mr. Bailey had a clear understanding of his options and the consequences of his plea.

## II.    HAD MR. BAILEY BEEN PROPERLY INFORMED OF THE CONSEQUENCES OF HIS PLEA, HE WOULD NOT HAVE ENTERED THE PLEA.

With regard to a Rule 11 violation specifically, "a defendant who seeks reversal of his conviction after a guilty plea ... must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez,* 542 U.S. 74, 83, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004). To meet this standard, a defendant need not "prove by a preponderance of the evidence that but for [the] error things would have been different." *Id.* at 83 n. 9, 124 S.Ct. at 2341 n. 9. Rather, he "must ... satisfy the judgment of the reviewing court ... that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* at 83, 124 S.Ct. at 2341 (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

It is clear that Mr. Bailey did not want to continue the plea hearing with his appointed attorney and that he wanted to have a mental health evaluation prior to pleading guilty. He entered his plea because his attorney told him that if he did not plead guilty on the day of the plea hearing, he would face a sentence of twenty-five

years to life.  However, had be been told that he 1) could wait until he had a mental health evaluation to decide what to do, or 2) that rejecting the plea offer would permit him to ask for a lower sentence than the one called for in the plea agreement, he would not have entered a plea at the plea hearing.

Had Mr. Bailey rejected the plea offer in the present case (the #30 case), he would still have had the option to plead guilty in the #48 case.  Due to the § 851 information that was filed in that case, he would have faced a mandatory minimum sentence of 10 years in prison, not twenty-five.  *See* 21 U.S.C. 841(b)(1)(B)("If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment . . .").  Defense counsel failed to inform Mr. Bailey of this fact and his incorrect assertion that the twenty-five-year mandatory minimum applied in the #48 case is evidence of this fact.

Finally, Counsel's initial sentencing memorandum actually requested a sentence lower than that called for in the plea agreement (doc. 6 at 16), which is evidence that both Mr. Bailey and his attorney would have rejected the plea

agreement if they had understood that the twenty-five-year mandatory minimum did not apply.[2]

### III. MR. BAILEY HAS SHOWN PLAIN ERROR AND THIS COURT SHOULD EXERCISE ITS DISCRETION AND VACATE HIS CONVICTION.

The Supreme Court has instructed that, once the first three conditions of plain-error analysis have been met, "the court of appeals should exercise its discretion to correct the forfeited error." *Rosales-Mireles v. United States*, 585 U.S. 129, 135 (2018); *see also United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019). The *Rosales-Mireles* Court explained that it had previously rejected a narrower rule that would have called for relief only "in those circumstances in which a miscarriage of justice would otherwise result, that is to say, where a defendant is actually innocent." *Id.* at 135. By focusing instead on principles of fairness, integrity, and public reputation, the Court recognized a broader category of errors that warrant correction on plain-error review. *Id.* at 137.

In context of a sentencing guideline error, the *Rosales-Mireles* court held then that the "risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the

---

[2]     The government asserted that this memo breached the plea agreement by asking for a sentence lower than that outlined in the plea agreement and Mr. Hames filed an amended memorandum to remove this request. Doc 7; Doc. 24 at 16.

range and the relative ease of correcting the error." *Id*. The Court further explained that "the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Id. citing* Bowers & Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–216 (2012).

In considering Rosales–Mireles' uncorrected sentencing error, the Court stated, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Id. citing United States v. Sabillon–Umana*, 772 F.3d 1328, 1333–1334 (10th Cir. 2014) (Gorsuch, J.).

Mr. Bailey has met the first three prongs of the plain-error analysis. Therefore, the only question that remains is whether the error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *See Rodriguez*, 398 F.3d at 1298. The Supreme Court has instructed that, once the first three conditions of plain-error analysis have been met, "the court of appeals should exercise its discretion to correct the forfeited error." *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1905 (2018); *see also United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019). The trial court's error in accepting Mr. Bailey's guilty

plea should be corrected. Holding otherwise would undermine the integrity of the judicial process and diminish the view that reasonable citizens have of the court and of the fairness of the judicial system.

Accordingly, this Court should exercise its discretion to grant relief to Mr. Bailey in this case.

## IV. CONCLUSION

For the reasons articulated above, this Court should vacate and remand Mr. Bailey's convictions and remand for further proceedings.

Respectfully submitted this 25th day of September 2024.

> *s/Saraliene S. Durrett*
> SARALIENE S. DURRETT
> GA Bar No. 837897
> Attorney for Appellant
> 1800 Peachtree Street
> Suite 300
> Atlanta, GA 30309
> (404) 433-0855
> ssd@defendingatl.com

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with 11th Cir. R. 27(d)(2), I certify that that the opening brief is filed with the type-volume limitations set out by this court.  This brief is written in 14 point, Times New Roman font, and it contains approximately 6885 words.

Respectfully submitted this 25th day of September 2024.

> *s/Saraliene S. Durrett*
> SARALIENE S. DURRETT
> GA Bar No. 837897
> Attorney for Appellant
> 1800 Peachtree Street
> Suite 300
> Atlanta, GA 30309
> (404) 433-0855

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that I have this day filed the foregoing opening brief with this Court's CM/ECF service, which causes a copy to be sent electronically to opposing counsel.

Respectfully submitted this 25th day of September 2024.

*s/Saraliene S. Durrett*
SARALIENE S. DURRETT
GA Bar No. 837897
Attorney for Appellant
1800 Peachtree Street
Suite 300
Atlanta, GA 30309
(404) 433-0855
ssd@defendingatl.com